**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

|  |  |  |
|---|---|---|
| ONE LONGHORN LAND I, L.P., | : | |
| Plaintiff | : | |
| v. | : | CIVIL ACTION NO. 4:15-cv-00203 |
| DEFENDANT FF ARABIAN, LLC; PALO VERDE FUND, L.P.; DAVID PRESLEY, INDIVIDUALLY AND AS TRUSTEE OF THE DAVID C. PRESLEY REVOCABLE TRUST DATED OCTOBER 18, 1991; PAUL ROSS; and ANTHONY STACY | : | JURY TRIAL DEMANDED |
| Defendants. | : | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff One Longhorn Land I, L.P. ("Plaintiff") files this First Amended Complaint against defendants Defendant FF Arabian, LLC ("Defendant FF Arabian"), Palo Verde Fund, L.P. ("Defendant Palo Verde"), David Presley ("Defendant Presley"), Paul Ross ("Defendant Ross"), and Anthony Stacy ("Defendant Stacy") to recover monetary damages, civil penalties, and all other available remedies for violations of the Securities Exchange Act of 1934 (the "Exchange Act"), the Texas Securities Act (the "Texas Act"), and Texas common law.[1]

---

[1] Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, following 21 days after service of a motion under Rule 12(e), a party may amend its pleading "with the opposing party's written consent or the court's leave." As of the date this First Amended Complaint was filed, Defendant Presley is the only defendant that has entered an appearance before this Court. Defendant Presley has provided written consent for Plaintiff to file this First Amended Complaint without the need to seek leave of this Court.

## NATURE OF THE ACTION

1.       On October 28, 2011 (the "Purchase Date"), Plaintiff purchased a 6.244% membership interest in Defendant FF Arabian (the "Security") in exchange for an investment of $500,000 ("Plaintiff's Investment").

2.       Unfortunately, Plaintiff did not know until it was too late that the Security was (and still remains) worthless because Defendant FF Arabian was (and still remains) hopelessly insolvent and inadequately capitalized.  Plaintiff also did not know until it was too late that Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) immediately and wrongfully misappropriated the entire amount of Plaintiff's Investment to affiliated companies for various expenses that were wholly unrelated to the Defendant FF Arabian.

3.       The only reason that Plaintiff purchased the Security is because Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) actively solicited and fraudulently induced Plaintiff to purchase the Security by:

- intentionally omitting to state that Defendant FF Arabian was inadequately capitalized to achieve its corporate purpose;

- intentionally misstating the amounts that other investors in Defendant FF Arabian had actually invested;

- intentionally omitting to provide Plaintiff with critical corporate governance documents;

- intentionally omitting to state that there were two different versions of critical corporate governance documents;

- intentionally omitting to provide Plaintiff with the alternate versions of these critical corporate governance documents;

- intentionally misstating that the representations and warranties contained in Defendant FF Arabian's company agreement were true and correct on and as of the Purchase Date; and

- intentionally misstating that the information and materials submitted or caused to be submitted to Plaintiff in connection with Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

4. Since the Purchase Date, Plaintiff has incurred more than $300,000 in legal expenses attempting to recover Plaintiff's Investment in various courts across the nation. Therefore, as a result of Defendants' fraudulent misconduct, Plaintiff has lost Plaintiff's Investment in its entirety — and more.

## JURISDICTION AND VENUE

5. To the extent this action asserts claims pursuant to the Exchange Act or the rules and regulations promulgated thereunder, this Court has: (a) exclusive jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 78aa(a) because this action is brought to enforce any liability or duty created by the Exchange Act or the rules and regulations promulgated thereunder; and (b) personal jurisdiction over each of the Defendants pursuant to 15 U.S.C. § 78aa(a) because process in any action brought to enforce any liability or duty created by the Exchange Act or the rules and regulations promulgated thereunder may be served in any other district of which a defendant is an inhabitant or wherever a defendant may be found.

6. To the extent this action also asserts claims pursuant to the laws of the State of Texas, this Court has: (a) supplemental jurisdiction over the subject matter of such claims pursuant to 28 U.S.C. § 1367(a) because such claims are so related to claims asserted pursuant to the Exchange Act or the rules and regulations promulgated thereunder that the claims asserted pursuant to the laws of the State of Texas form part of the same case or controversy; and (b) personal jurisdiction over each of the Defendants pursuant to Section 17.042 of the Texas Civil Practice and Remedies Code because each Defendant purposefully availed itself of the privileges and benefits of conducting business in the State of Texas by either (i) engaging in business in the

State of Texas by entering into a contract with Plaintiff, who is a resident of the State of Texas, that was performed in whole or in part in the State of Texas, or (ii) committing a tort, which is the subject of this action, in whole or in part in the State of Texas.

7. Venue is proper in this Court pursuant to 15 U.S.C. § 78aa(a) because at least one act or transaction constituting a violation of the Exchange Act or the rules and regulations promulgated thereunder occurred in the Eastern District of Texas (this "District") insofar as: (a) Plaintiff is a resident of this District; and (b) Defendant FF Arabian, in connection with the purchase or sale of securities, directly or indirectly (i) employed devices, schemes or artifices to defraud Plaintiff in this District, (ii) made untrue statements of material fact to Plaintiff in this District, or omitted to state to Plaintiff in this District material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in acts, practices or courses of business which operated as a fraud or deceit upon Plaintiff, a purchaser of securities, in this District.

8. Venue also is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in this District insofar as: (a) Plaintiff is a resident of this District; and (b) Defendant FF Arabian, in connection with the purchase or sale of securities, directly or indirectly (i) employed devices, schemes or artifices to defraud Plaintiff in this District, (ii) made untrue statements of material fact to Plaintiff in this District, or omitted to state to Plaintiff in this District material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in acts, practices or courses of business which operated as a fraud or deceit upon Plaintiff, a purchaser of securities, in this District.

<u>**PARTIES**</u>

9.      Plaintiff is a limited partnership that: (a) is organized pursuant to the laws of the State of Texas; and (b) maintains its principal place of business in, and thus is a resident of, Collin County, Texas.

10.      Defendant FF Arabian is a limited liability company that: (a) is organized pursuant to the laws of the State of Delaware; and (b) can be served by its registered agent, National Registered Agents, Inc., at 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

11.      Defendant Palo Verde is a limited partnership that: (a) is organized pursuant to the laws of the State of Delaware; and (b) can be served by its registered agent, Business Filings Incorporated, at 108 West 13th Street, Wilmington, DE 19801.

12.      Defendant Presley is an individual that is a resident of the State of Oklahoma. Upon information and belief, Defendant Presley resides and can be served at 11428 South Sandusky Avenue, Tulsa, OK 74137. Defendant Presley is named: (a) in his individual capacity; and (b) in his capacity as Trustee the David C. Presley Revocable Trust Dated October 18, 1991 (the "Presley Trust").

13.      Defendant Ross is an individual that is a resident of the State of Oklahoma. Upon information and belief, Defendant Ross resides and can be served at 5219 East 105th Street, Tulsa, OK 74137.

14.      Defendant Stacy is an individual that is a resident the State of Arizona. Upon information and belief, Defendant Ross resides and can be served at 9233 East Canyon View Road, Scottsdale, AZ 85255.

## FACTUAL BACKGROUND

**A.  THE FREEDOM FILMS ENTERPRISE AND ITS CONTROLLING MEMBERS**

### i.  Freedom Films LLC

15.     Freedom Films LLC ("Freedom Films") is a California limited liability company that controls various special purpose entities (the "Freedom Films Companies") that are involved in the development and production of motion pictures.[2]

16.     Freedom Films is governed by an Operating Agreement (the "FFL Operating Agreement") dated August 19, 2005.  According to the FFL Operating Agreement, Freedom Films has two members, each of whom own a 50% interest in Freedom Films: (a) the Presley Trust; and (b) Perception Entertainment, Inc. ("Perception Entertainment").  Upon information and belief, Defendant Presley has direct or indirect possession of the power to direct or cause the direction of the management and policies of the Presley Trust.  Upon information and belief, Defendant Presley's son, Brian Presley, has direct or indirect possession of the power to direct or cause the direction of the management and policies of Perception Entertainment.[3]

17.     Although the FFL Operating Agreement contemplates the appointment of a manager, the unanimous approval of both members is necessary to direct or cause the direction of the management and policies of Freedom Films.  For example, the FFL Operating Agreement provides that the unanimous approval of both members is necessary to, among other things: (a) engage in any business other than the business of film and television production; (b) issue

---

[2]     On April 16, 2014, Freedom Films filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.  *See In re Freedom Films, LLC*, 14-bk-1002 (Bankr. C.D. Ca.).  As a result, Plaintiff is unable to assert claims against Freedom Films in this action at the present time.

[3]     On June 18, 2014, Brian Presley filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Central District of California.  *See In re Brian D. Presley*, Case no. 14-bk-13029 (Bankr. C.D. Ca.).  As a result, Plaintiff is unable to assert claims against Brian Presley in this action at the present time.

membership interests; (c) make distributions to any members; (d) approve the transfer any membership interests; (e) amend the FFL Operating Agreement; (f) bind the company to any liability or expense in excess of $25,000; (g) sell or otherwise dispose of all or substantially all of the company's assets; (h) merge or combine the company with another entity, or wind-up and dissolve the company; (i) take any action that would cause a member to incur personal liability for the company's obligations; (j) take any action that would make it impossible to carry on the company's business; (k) confess a judgment against the company; or (l) take any action that requires a vote, consent, or approval of the members.

18.     Because Freedom Films cannot undertake any of these fundamental actions without the approval of the Presley Trust or Perception Entertainment, they each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Freedom Films.   And because Defendant Presley and Brian Presley each have direct or indirect possession of the power to direct or cause the direction of the management and policies of the Presley Trust and Perception Entertainment respectively, Defendant Presley and Brian Presley each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Freedom Films.

19.     Furthermore, upon information and belief, Defendant Presley, as Brian Presley's father and financial sponsor, continuously and systematically exerted paternal and financial influence and control over Brian Presley in order to direct or cause the direction of Brian Presley's actions in connection with Freedom Films and each of the Freedom Films Companies. For example, Defendant Presley directed or caused the direction of Brian Presley's actions relating to: (a) the structuring of Freedom Films and each of the Freedom Films Companies; (b) sourcing and using funds held by Freedom Films and each of the Freedom Films Companies; (c)

the contents of marketing materials, financial statements, and legal filings of Freedom Films and each of the Freedom Films Companies; and (d) the identification and solicitation of investors in each of the Freedom Films Companies. Because Defendant Presley and Brian Presley each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Freedom Films and each of the Freedom Films Companies, and Defendant Presley has direct or indirect possession of the power to direct or cause the direction of Brian Presley's actions in connection with Freedom Films and each of the Freedom Films Companies, Defendant Presley has direct or indirect possession of the power to direct or cause the direction of the management and policies of Freedom Films and each of the Freedom Films Companies.

### ii.    Freedom Films Arabian, LLC

20.    One of the Freedom Films Companies is Defendant FF Arabian, a limited liability company that was formed by Freedom Films in July 2010 for the purpose of developing, financing, and distributing motion pictures.

21.    Defendant FF Arabian is governed by a Limited Liability Company Agreement (the "FFA Company Agreement") dated July 30, 2010. According to the FFA Company Agreement: (a) the sole manager of Defendant FF Arabian is Freedom Films; (b) the super-majority member of Defendant FF Arabian is Defendant Palo Verde; and (c) "[t]he purposes for which [Defendant FF Arabian] is organized are . . . to develop, partially finance and arrange domestic distribution of the movie "ARABIAN NIGHTS" as the same may be modified (the "Movie Project") . . . ."[4]

22.    Freedom Films, as sole manager of Defendant FF Arabian, has direct or indirect possession of the power to direct or cause the direction of the management and policies of

---

[4]    In December 10, 2010, the members of Defendant FF Arabian amended the FFA Company Agreement to change the company's corporate purpose from developing, financing, and distributing the movie "Arabian Nights," to developing, financing, and distributing the movies "Thunder Run" and "Race to Save Nome."

Defendant FF Arabian. For example, the FFA Company Agreement authorizes and empowers Freedom Films to, among other things: (a) manage and conduct the day-to-day operation of the company; (b) contract for the services of employees and agents; (c) invest company funds; (d) sue and defend the company in connection with any dispute; (e) enter into and perform contracts on behalf of the company; and (f) take any and all other action in connection with the company, including without limitation conducting financial transactions.

23.     Because Freedom Films is authorized and empowered to cause Defendant FF Arabian to undertake these fundamental actions, Freedom Films has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian. And because Defendant Presley has direct or indirect possession of the power to direct or cause the direction of the management and policies of Freedom Films, Defendant Presley has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian.

24.     Defendant Palo Verde, as super-majority member of Defendant FF Arabian, also has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian. For example, the FFA Company Agreement provides that the approval of Defendant Palo Verde is necessary to, among other things: (a) issue or redeem membership interests; (b) make distributions to, or require additional capital contributions from, any members; (c) approve the transfer any membership interests; (d) amend the FFA Company Agreement; (e) borrow money on behalf of the company; (f) sell or otherwise dispose of all or substantially all of the company's assets; (g) merge or combine the company with another entity, or wind-up and dissolve the company; (h) take any action that would cause a member to incur personal liability for the company's obligations; (i) take any action that would make it

impossible to carry on the company's business; (j) confess a judgment against the company; or (k) take any action that requires a vote, consent, or approval of the members. In addition, Defendant Palo Verde is authorized and empowered to remove Freedom Films as manager of the company. Upon information and belief, Defendant Ross and Defendant Stacy each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Palo Verde.

25. Because Defendant FF Arabian cannot take any of these fundamental actions without the approval of Defendant Palo Verde, it has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian. And because, on information and belief, Defendant Ross and Defendant Stacy each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant Palo Verde, Defendant Ross and Defendant Stacy each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian.

**B.**     **DEFENDANT PRESLEY, DEFENDANT ROSS, AND DEFENDANT STACY MISAPPROPRIATE MONEY FROM DEFENDANT FF ARABIAN TO LINE THEIR OWN POCKETS**

26. At the time Defendant Palo Verde invested in Defendant FF Arabian, Defendant Palo Verde already had an outstanding investment of $3.5 million (the "Touchback Investment") in one of the Freedom Film Companies that was producing a motion picture called "Touchback." Unfortunately, Touchback was a financial disaster.

27. Unable or unwilling to explain this loss to Defendant Palo Verde's investors, Defendant Ross and Defendant Stacy demanded that Defendant Presley return the Touchback Investment. The commercial failure of Touchback, however, left Defendant Presley and the

Freedom Films Companies unable to scrape together the money that Defendant Palo Verde demanded.

28.     Because Defendant Palo Verde was one of the most lucrative investors that Defendant Presley and Freedom Films had in their stable, Defendant Presley was ready, willing, and able to do whatever was necessary to return the Touchback Investment and, thereby, ensure that Defendant Palo Verde would continue investing in other Freedom Films Companies.

29.     To accomplish this objective, Defendant Presley, Defendant Ross, and Defendant Stacy concocted and implemented a classic Ponzi scheme: they would raise new money for Defendant FF Arabian from unwitting investors like Plaintiff, and wrongfully misappropriate that money to other Freedom Films Companies as well as to Defendant Palo Verde to repay the Touchback Investment.

30.     In furtherance of this scheme, Defendant Palo Verde raised $5.5 million from its investors and, in turn, invested that $5.5 million (the "Arabian Investment") in Defendant FF Arabian during July, August, and September of 2010.  Of course, Defendant Palo Verde's investors in Defendant FF Arabian did not know that part of the Arabian Investment would be misappropriated to other Defendant Palo Verde investors to repay losses in connection with the Touchback Investment, and the remainder would be misappropriated to other Freedom Films Companies to pay expenses that were wholly unrelated to the Movie Project or even Defendant FF Arabian.

31.     In December 2010, Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) wrongfully transferred $3.5 million of the Arabian Investment to Defendant Palo Verde to repay the Touchback Investment.  At the same time, Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant

Ross, and Defendant Stacy) wrongfully transferred the remaining $2.0 million of the Arabian Investment to other Freedom Films Companies to pay expenses that were wholly unrelated to the Movie Project or even Defendant FF Arabian.

32.     This wrongful misappropriation of money from Defendant FF Arabian left it inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement.  This wrongful misappropriation of money from Defendant FF Arabian also violated the express terms of the FFA Company Agreement.  Indeed, Section 1.3 of the FFA Company Agreement expressly provides that "[t]he purposes for which [Defendant FF Arabian] is organized are (a) to develop, partially finance and arrange domestic distribution of the [Movie Project] . . . ; and (b) to engage in or perform any and all activities or businesses that are related to or incident to the foregoing . . . ."  Furthermore, Section 4.8 of the FFA Company Agreement expressly provides that Defendant FF Arabian only "will use its capital as partial production financing for the Movie Project."

33.     Around this same time, it became clear to Defendant Presley, Defendant Ross, and Defendant Stacy that the Movie Project, just like Touchback, was going to be a flop. Emboldened by the return of the Touchback Investment at the expense of Defendant FF Arabian's investors, Defendant Ross and Defendant Stacy demanded that David Presley return $4.0 million of the Arabian Investment.

34.     Section 2.8 of the FFA Company Agreement, however, expressly provides that "no interest shall be paid by [Defendant FF Arabian] in respect of any Member's Capital Contributions or Capital Account," and "no Member may withdraw or receive a return of its Capital Contribution."  Section 3.4 of the FFA Company Agreement further provides that "no

Member . . . shall have the right to withdraw capital from [Defendant FF Arabian] or to receive any distribution or return of its Capital Contribution."

35.     These prohibitions were not going to stop Defendant Presley and Freedom Films from satisfying their most lucrative investors.  Instead, Defendant Presley, Defendant Ross, and Defendant Stacy concocted yet another malicious scheme: they would disguise the return of $4.0 of the Arabian Investment as an "investment" in Defendant Palo Verde.

36.     In December 2010, Defendant Palo Verde (at the direction and control of Defendant Ross and Defendant Stacy) and Freedom Films (at the direction and control of Defendant Presley) executed an Action By A Majority In Interest Of Members (the "Majority Action") dated December 14, 2010, resolving that Defendant FF Arabian would "invest $4,000,000 with its member, [Defendant Palo Verde], which shall . . . return such invested funds together with any earnings thereon to the Company on or before March 15, 2011 . . . ."  Needless to say, Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) made the $4.0  million "investment" (the "Palo Verde Investment") in Defendant Palo Verde almost immediately.

37.     The Palo Verde Investment exacerbated Defendant FF Arabian's already dire financial condition, and increased Defendant FF Arabian's reliance on additional funding from unwitting investors like Plaintiff.  To make matters even worse, Defendant Palo Verde did not comply with its contractual obligation to return the entire Palo Verde Investment on or before March 15, 2011.  To the contrary, Defendant Palo Verde only returned $1.75 million and kept the remaining $2.25 million.

## C. DEFENDANT FF ARABIAN OMITS AND MISSTATES MATERIAL FACTS TO INDUCE PLAINTIFF'S INVESTMENT IN DEFENDANT FF ARABIAN

38.    In an effort to fill its ever-widening capitalization gap, Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) actively solicited investments from unwitting investors like Plaintiff.

39.    Little did Plaintiff know, however, Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) was misleading Plaintiff into funding the shortfall created by the wrongful misappropriation of $3.5 million to repay the Touchback Investment, the wrongful misappropriation of $2.0 million to pay expenses incurred by other Freedom Films Companies, and the wrongful misappropriation of $4.0 million to pay the Palo Verde Investment.

40.    In connection with Defendant FF Arabian's solicitation of Plaintiff, representatives of Defendant FF Arabian — including Defendant Ross and Defendant Stacy — communicated with Rex Glendenning, a corporate representative of the general partner of Plaintiff, on at least a dozen occasions between July 2011 and October 2011 via face-to-face meetings, telephonic conferences, and/or email communications all directed to Mr. Glendenning in the Eastern District of Texas.[5]

41.    In connection with Defendant FF Arabian's solicitation of Plaintiff, on July 25, 2011, Defendant Stacy, acting as authorized representative on behalf of Defendant FF Arabian, and at the direction and control of Defendant Presley, sent Plaintiff an email attaching a copy of: (a) the FFA Company Agreement; and (b) an Amendment to the FFA Company Agreement (the

---

[5]    In connection with Defendant FF Arabian's solicitation of Plaintiff, Defendant Ross and/or Defendant Stacy, acting as authorized representatives on behalf of Defendant FF Arabian, and at the direction and control of Defendant Presley, conducted face-to-face meetings with Plaintiff in or around Dallas, Texas on: (a) May 18, 2011; (b) June 30, 2011; (c) July 27, 2011; (d) August 8, 2011; (e) August 23, 2011; (f) September 21, 2011; and (g) October 5, 2011.

"First Amendment") which stated that Defendant FF Arabian had a capitalization of $8.0 million.

42.     In connection with Defendant FF Arabian's solicitation of Plaintiff, on September 19, 2011, Matthew Fladell, acting as counsel on behalf of Defendant FF Arabian, and at the direction and control of Defendant Presley, sent Plaintiff an email attaching a copy of the Second Amendment to the FFA Company Agreement (the "Second Amendment") which set forth that Plaintiff would purchase the Security and be admitted as a member of Defendant FF Arabian in exchange for Plaintiff's Investment.

43.     In connection with Plaintiff's decision whether to purchase the Security, Plaintiff requested information relating to the financial condition of Defendant FF Arabian.  However, in order to induce Plaintiff's investment, Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) intentionally omitted to state that Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement.  As a result of this omission, all of the representations made to Plaintiff were misleading.  A reasonable investor would have considered the fact that Defendant FF Arabian did not have the financial wherewithal to achieve the corporate purpose set forth in the FFA Company Agreement important in making a decision whether to invest in Defendant FF Arabian.  Thus, it is obvious that Defendant FF Arabian intentionally omitted this information because no reasonable investor would purchase securities in a company that was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement.

44.     In connection with Plaintiff's decision whether to purchase the Security, Plaintiff also requested information relating to the amount of capital that other Freedom Films Companies had invested in Defendant FF Arabian.  However, in order to induce Plaintiff's investment,

Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) intentionally misstated in the Second Amendment that Freedom Films Independent, LLC ("FF Independent") had invested $1.75 million in Defendant FF Arabian when, in fact, FF Independent had only invested $1.0 million. A reasonable investor would have considered the fact that Defendant FF Arabian's capitalization was artificially inflated important in making a decision whether to invest in Defendant FF Arabian. Thus, it is obvious that Defendant FF Arabian intentionally misstated this information because no reasonable investor would purchase securities in a company that was not only inadequately capitalized, but had even less capital than was being represented.

45. In connection with Plaintiff's decision whether to purchase the Security, Plaintiff also requested a complete set of corporate governance documents for Defendant FF Arabian. However, in order to induce Plaintiff's investment, Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) intentionally omitted to provide Plaintiff with the Majority Action and, thus, intentionally omitted to state that Defendant FF Arabian had even made the Palo Verde Investment. As a result of this omission, all of the representations made to Plaintiff were misleading. A reasonable investor would have considered the fact that Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider important in making a decision whether to invest in Defendant FF Arabian. Thus, it is obvious that Defendant FF Arabian omitted this information because no reasonable investor would acquire securities in an undercapitalized company that had agreed to "invest" more than 50% of its purported capitalization in an insider.

46. The Majority Action was not the only corporate governance document that Defendant FF Arabian intentionally omitted to provide Plaintiff in order to induce its investment.

Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) also intentionally: (a) omitted to state that there were two different versions of the First Amendment, each of which contained different rights and obligations relating to the company and its investor's rights therein; (b) omitted to state that there were two different versions of the Second Amendment, each of which contained different rights and obligations relating to the company and its investor's rights therein; and (c) omitted to provide Plaintiff with the alternate versions of the First Amendment and the Second Amendment.  As a result of these omissions, all of the representations made to Plaintiff were misleading.  A reasonable investor would have considered the fact that Defendant FF Arabian had "shadow versions" of critical corporate governance documents — each of which contained different rights and obligations relating to the company and its investor's rights therein — important in making a decision whether to invest in Defendant FF Arabian.  Thus, it is obvious that Defendant FF Arabian omitted this information because no reasonable investor would acquire securities in a company that had "shadow versions" of critical corporate governance documents each of which contained different rights and obligations relating to the company and its investor's rights therein.

47.     In connection with Plaintiff's decision whether to purchase the Security, Plaintiff found solace in the fact that Section 5 of the Second Amendment expressly provides that: (a) "the representations and warranties contained in the [FFA] Company Agreement [w]ere true and correct on and as of [the Purchase Date] as though made on [such] date . . ."; and (b) all information and materials submitted or caused to be submitted to [Plaintiff] in connection with th[e Second Amendment] and [Plaintiff]'s entry as a member into [Defendant FF Arabian] are true and correct in all material respects."  The Second Amendment was signed by Freedom Films, as Manager of Defendant FF Arabian, and Defendant Palo Verde.

48.     Plaintiff did not know until it was too late, however, that each of these representations was false at the time they were made to Plaintiff by Defendant FF Arabian.

49.     Contrary to Section 5(a) of the Second Amendment, the representations and warranties contained in the FFA Company Agreement were not true and correct on and as of the Purchase Date.  Section 4.8 of the FFA Company Agreement expressly provides that Defendant FF Arabian "will use its capital as partial production financing for the Movie Project."  However, as discussed above, in December 2010: (a) Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) wrongfully transferred $3.5 million of the Arabian Investment to Defendant Palo Verde to repay the Touchback Investment; and (b) Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) wrongfully transferred the remaining $2.0 million of the Arabian Investment to other Freedom Films Companies to pay expenses that were wholly unrelated to the Movie Project or even Defendant FF Arabian.  A reasonable investor would have considered the fact that Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian important in making a decision whether to invest in Defendant FF Arabian.  Thus, it is obvious that Defendant FF Arabian intentionally misstated this information because no reasonable investor would purchase securities in a company that had impermissibly used its capital for purposes that were wholly unrelated to the company or its stated purpose.

50.     Furthermore, contrary to Section 5(b) of the Second Amendment, the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.  As discussed above, Defendant FF Arabian (at the direction and

control of Defendant Presley, Defendant Ross, and Defendant Stacy) intentionally: (a) omitted to state that Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) provided Plaintiff with the Second Amendment that intentionally misstated that FF Independent had invested $1.75 million in Defendant FF Arabian when, in fact, FF Independent had only invested $1 million; and (c) omitted to provide Plaintiff with the Majority Action, the alternate version of the First Amendment, and the alternate version of the Second Amendment. A reasonable investor would have considered the fact that Defendant FF Arabian was inadequately capitalized, that Defendant FF Arabian's capitalization was artificially inflated, that Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider, and that Defendant FF Arabian had "shadow versions" of critical corporate governance documents each of which contained different rights and obligations relating to the company and its investor's rights therein important in making a decision whether to invest in Defendant FF Arabian. Thus, it is obvious that Defendant FF Arabian intentionally misstated this information because no reasonable investor would purchase securities in a company that was inadequately capitalized, had artificially inflated its capitalization, had invested more than 50% of its purported capitalization in an insider, and had "shadow versions" of critical corporate governance documents each of which contained different rights and obligations relating to the company and its investor's rights therein.

51. Plaintiff reasonably and justifiably relied upon each of the misrepresentations and omissions set forth in Paragraph 41 through 50 in connection with Plaintiff's purchase of the Security.

52. Consequently, on the Purchase Date, Plaintiff purchased the Security and transferred Plaintiff's Investment to a bank account held by Defendant FF Arabian.

53.     Plaintiff did not know until it was too late, however, that the Security was worthless on the Purchase Date because Defendant FF Arabian was hopelessly insolvent and inadequately capitalized on the Purchase Date.  Plaintiff also did not know until it was too late that Defendant FF Arabian (at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy) immediately transferred the entire amount of Plaintiff's Investment to other Freedom Films Companies for various expenses that were wholly unrelated to the Movie Project or even Defendant FF Arabian.

54.     As of the date this First Amended Complaint was filed, Defendant FF Arabian remains hopelessly insolvent and inadequately capitalized.  In addition, since the Purchase Date, Plaintiff already has incurred more than $300,000 in legal expenses attempting to recover Plaintiff's Investment in various courts across the nation.  Therefore, as a result of Defendants' fraudulent misconduct, Plaintiff has lost its entire Capital Contribution — and more.

## CAUSES OF ACTION

### COUNT I:
### VIOLATION OF SECTION 10(B) OF THE EXCHANGE ACT
### AND RULE 10B-5 PROMULGATED THEREUNDER
### AGAINST ALL DEFENDANTS

55.     Plaintiff incorporates the facts and allegations set forth above as if they were fully set forth herein.

56.     The Security is a security for purposes of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

57.     Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, in connection with the purchase or sale of the Security, and by the use of the means and instrumentalities of interstate commerce, each directly or indirectly: (a) employed devices, schemes or artifices to defraud Plaintiff; (b) intentionally

misstated and omitted to state to Plaintiff, the purchaser of the Security, material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices or courses of business which operated as a fraud or deceit upon Plaintiff, the purchaser of the Security.

58. Specifically, Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy: (a) intentionally omitted to state that Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) intentionally misstated that FF Independent had invested $1.75 million in Defendant FF Arabian when, in fact, FF Independent had only invested $1 million; (c) intentionally omitted to provide Plaintiff with the Majority Action; (d) intentionally omitted to state that there were two different versions of the First Amendment; (e) intentionally omitted to state that there were two different versions of the Second Amendment; (f) intentionally omitted to provide Plaintiff with the alternate version of the First Amendment; (g) intentionally omitted to provide Plaintiff with the alternate version of the Second Amendment; (h) intentionally misstated that the representations and warranties contained in the FFA Company Agreement were true and correct on and as of the Purchase Date when, in fact, Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and (i) intentionally misstated that the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects. As a result of these misrepresentations and omissions, all of the representations made to Plaintiff were misleading.

59.     These misrepresentations and omissions were material because a reasonable investor would have attached importance to, and be induced to act upon, the misrepresented and omitted information in determining whether to invest in Defendant FF Arabian. Indeed, reasonable investor would have considered it important in making a decision whether to invest in Defendant FF Arabian that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) Defendant FF Arabian's capitalization was artificially inflated; (c) Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider; (d) Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; (e) Defendant FF Arabian had "shadow versions" of critical corporate governance documents, each of which contained different rights and obligations relating to the company and its investor's rights therein; and (f) the information and materials submitted or caused to be submitted to such investor were not true and correct in all material respects.

60.     At the time Defendant FF Arabian intentionally misstated and omitted to state this information to Plaintiff, Defendant FF Arabian knew that the representations were false and that Defendant FF Arabian had omitted to state material information. Indeed, Defendant FF Arabian knew or had reason to know that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement because Defendant FF Arabian had access to its own corporate records and financial statements; (b) FF Independent had not actually invested $1.75 million in Defendant FF Arabian because Defendant FF Arabian had access to its own corporate records and financial statements; (c) Defendant FF Arabian had failed to provide Plaintiff with the Majority Action, the alternate version of the First Amendment, and

the alternate version of the Second Amendment because Defendant FF Arabian knew what documents it had, and had not, provided to Plaintiff; (d) the representations and warranties contained in the FFA Company Agreement were not true and correct on and as of the Purchase Date because Defendant FF Arabian knew that it had wrongfully transferred (i) $3.5 million of the Arabian Investment to Defendant Palo Verde to repay the Touchback Investment, and (ii) $2.0 million of the Arabian Investment to other Freedom Films Companies to pay expenses that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and (e) the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

61. Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy: (a) misstated and omitted to state this information to Plaintiff with the intent that Plaintiff would invest in Defendant FF Arabian based upon such misstatements and omissions; and/or (b) had reason to expect that Plaintiff would invest in Defendant FF Arabian based upon such misstatements and omissions. Indeed, at the time Defendant FF Arabian misstated and omitted to state this information to Plaintiff, Defendant FF Arabian was in dire financial condition, and needed to fund the shortfall created by the wrongful misappropriation of $3.5 million to repay the Touchback Investment, the wrongful misappropriation of $2.0 million to other Freedom Films Companies, and the wrongful misappropriation of $4.0 million to pay the Palo Verde Investment. The only way Defendant FF Arabian could fund this shortfall was to solicit new investments from unwitting investors like Plaintiff. Of course, no reasonable person would invest in a company that was inadequately capitalized to achieve its corporate purpose, had artificially inflated its capitalization, had

invested more than 50% of its purported capitalization in an insider, had impermissibly used its capital for purposes that were wholly unrelated to its stated corporate purpose, and had provided incomplete and inaccurate information to its investors.

62. Plaintiff was justified in relying upon these misrepresentations and omissions. Indeed, Section 5 of the Second Amendment expressly provides that: (a) "the representations and warranties contained in the [FFA] Company Agreement [w]ere true and correct on and as of [the Purchase Date] as though made on [such] date . . .''; and (b) all information and materials submitted or caused to be submitted to [Plaintiff] in connection with th[e Second Amendment] and [Plaintiff]'s entry as a member into [Defendant FF Arabian] are true and correct in all material respects."

63. Plaintiff suffered damages in reliance upon, and as a direct and proximate result of, these misrepresentations and omissions. Indeed, Plaintiff would not have invested (and lost) Plaintiff's Investment had Plaintiff been aware that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) Defendant FF Arabian's capitalization was artificially inflated; (c) Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider; (d) Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and, (e) the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

64. Because Freedom Films has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian, and Defendant Presley has direct or indirect possession of the power to direct or cause the direction of the

management and policies of Freedom Films, Defendant Presley has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian. Therefore, pursuant to Section 20(a) of the Exchange Act, Defendant Presley is jointly and severally liable for Defendant FF Arabian's violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder to the same extent as Defendant FF Arabian.

65.     In addition, Defendant Palo Verde has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian. Therefore, pursuant to Section 20(a) of the Exchange Act, Defendant Palo Verde is jointly and severally liable for Defendant FF Arabian's violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder to the same extent as Defendant FF Arabian.

66.     In addition, because Defendant Palo Verde has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian, and Defendant Ross and Defendant Stacy each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant Palo Verde, Defendant Ross and Defendant Stacy each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian. Therefore, pursuant to Section 20(a) of the Exchange Act, Defendant Ross and Defendant Stacy each are jointly and severally liable for Defendant FF Arabian's violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder to the same extent as Defendant FF Arabian.

### COUNT II:
### VIOLATION OF SECTION 581-33 OF THE TEXAS ACT
### AGAINST ALL DEFENDANTS

67.     Plaintiff incorporates the facts and allegations set forth above as if they were fully set forth herein.

68. The Security is a security for purposes of Section 581-33 of the Texas Act.

69. Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, offered and sold the Security to Plaintiff by means, directly or indirectly, of an: (a) untrue statement made to Plaintiff of material facts; and/or (b) omission to state to Plaintiff material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70. Specifically, Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy: (a) intentionally omitted to state that Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) intentionally misstated that FF Independent had invested $1.75 million in Defendant FF Arabian when, in fact, FF Independent had only invested $1 million; (c) intentionally omitted to provide Plaintiff with the Majority Action; (d) intentionally omitted to state that there were two different versions of the First Amendment; (e) intentionally omitted to state that there were two different versions of the Second Amendment; (f) intentionally omitted to provide Plaintiff with the alternate version of the First Amendment; (g) intentionally omitted to provide Plaintiff with the alternate version of the Second Amendment; (h) intentionally misstated that the representations and warranties contained in the FFA Company Agreement were true and correct on and as of the Purchase Date when, in fact, Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and (i) intentionally misstated that the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material

respects. As a result of these misrepresentations and omissions, all of the representations made to Plaintiff were misleading.

71. These misrepresentations and omissions were material because a reasonable investor would have attached importance to, and be induced to act upon, the misrepresented and omitted information in determining whether to invest in Defendant FF Arabian. Indeed, reasonable investor would have considered it important in making a decision whether to invest in Defendant FF Arabian that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) Defendant FF Arabian's capitalization was artificially inflated; (c) Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider; (d) Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; (e) Defendant FF Arabian had "shadow versions" of critical corporate governance documents, each of which contained different rights and obligations relating to the company and its investor's rights therein; and (f) the information and materials submitted or caused to be submitted to such investor were not true and correct in all material respects.

72. At the time Defendant FF Arabian intentionally misstated and omitted to state this information to Plaintiff, Defendant FF Arabian knew that the representations were false and that Defendant FF Arabian had omitted to state material information. Indeed, Defendant FF Arabian knew or had reason to know that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement because Defendant FF Arabian had access to its own corporate records and financial statements; (b) FF Independent had not actually invested $1.75 million in Defendant FF Arabian because Defendant FF Arabian had

access to its own corporate records and financial statements; (c) Defendant FF Arabian had failed to provide Plaintiff with the Majority Action, the alternate version of the First Amendment, and the alternate version of the Second Amendment because Defendant FF Arabian knew what documents it had, and had not, provided to Plaintiff; (d) the representations and warranties contained in the FFA Company Agreement were not true and correct on and as of the Purchase Date because Defendant FF Arabian knew that it had wrongfully transferred (i) $3.5 million of the Arabian Investment to Defendant Palo Verde to repay the Touchback Investment, and (ii) $2.0 million of the Arabian Investment to other Freedom Films Companies to pay expenses that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and (e) the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

73.    Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy: (a) misstated and omitted to state this information to Plaintiff with the intent that Plaintiff would invest in Defendant FF Arabian based upon such misstatements and omissions; and/or (b) had reason to expect that Plaintiff would invest in Defendant FF Arabian based upon such misstatements and omissions.  Indeed, at the time Defendant FF Arabian misstated and omitted to state this information to Plaintiff, Defendant FF Arabian was in dire financial condition, and needed to fund the shortfall created by the wrongful misappropriation of $3.5 million to repay the Touchback Investment, the wrongful misappropriation of $2.0 million to other Freedom Films Companies, and the wrongful misappropriation of $4.0 million to pay the Palo Verde Investment.  The only way Defendant FF Arabian could fund this shortfall was to solicit new investments from unwitting investors like

Plaintiff. Of course, no reasonable person would invest in a company that was inadequately capitalized to achieve its corporate purpose, had artificially inflated its capitalization, had invested more than 50% of its purported capitalization in an insider, had impermissibly used its capital for purposes that were wholly unrelated to its stated corporate purpose, and had provided incomplete and inaccurate information to its investors.

74.     Plaintiff was justified in relying upon these misrepresentations and omissions. Indeed, Section 5 of the Second Amendment expressly provides that: (a) "the representations and warranties contained in the [FFA] Company Agreement [w]ere true and correct on and as of [the Purchase Date] as though made on [such] date . . ."; and (b) all information and materials submitted or caused to be submitted to [Plaintiff] in connection with th[e Second Amendment] and [Plaintiff]'s entry as a member into [Defendant FF Arabian] are true and correct in all material respects."

75.     Plaintiff suffered damages in reliance upon, and as a direct and proximate result of, these misrepresentations and omissions. Indeed, Plaintiff would not have invested (and lost) Plaintiff's Investment had Plaintiff been aware that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) Defendant FF Arabian's capitalization was artificially inflated; (c) Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider; (d) Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and, (e) the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

76.     Because Freedom Films has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian, and Defendant Presley has direct or indirect possession of the power to direct or cause the direction of the management and policies of Freedom Films, Defendant Presley has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian.  Therefore, pursuant to Section 581-33(F)(1) of the Texas Act, Defendant Presley is jointly and severally liable for Defendant FF Arabian's violations of Section 581-33(A) of the Texas Act to the same extent as Defendant FF Arabian.

77.     In addition, Defendant Palo Verde has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian.  Therefore, pursuant to Section 581-33(F)(1) of the Texas Act, Defendant Palo Verde is jointly and severally liable for Defendant FF Arabian's violations of Section 581-33(A) of the Texas Act to the same extent as Defendant FF Arabian.

78.     In addition, because Defendant Palo Verde has direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian, and Defendant Ross and Defendant Stacy each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant Palo Verde, Defendant Ross and Defendant Stacy each have direct or indirect possession of the power to direct or cause the direction of the management and policies of Defendant FF Arabian.  Therefore, pursuant to Section 581-33(F)(1) of the Texas Act, Defendant Ross and Defendant Stacy each are jointly and severally liable for Defendant FF Arabian's violations of Section 581-33(A) of the Texas Act to the same extent as Defendant FF Arabian.

## COUNT III:
### AIDING & ABETTING VIOLATION OF SECTION 581-33 OF THE TEXAS ACT AGAINST DEFENDANT PRESLEY, DEFENDANT ROSS, AND DEFENDANT STACY

79.     Plaintiff incorporates the facts and allegations set forth above as if they were fully set forth herein.

80.     The Security is a security for purposes of Section 581-33 of the Texas Act.

81.     Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, offered and sold the Security to Plaintiff by means, directly or indirectly, of an: (a) untrue statement made to Plaintiff of material facts; and/or (b) omission to state to Plaintiff material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

82.     Specifically, Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy: (a) intentionally omitted to state that Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) intentionally misstated that FF Independent had invested $1.75 million in Defendant FF Arabian when, in fact, FF Independent had only invested $1 million; (c) intentionally omitted to provide Plaintiff with the Majority Action; (d) intentionally omitted to state that there were two different versions of the First Amendment; (e) intentionally omitted to state that there were two different versions of the Second Amendment; (f) intentionally omitted to provide Plaintiff with the alternate version of the First Amendment; (g) intentionally omitted to provide Plaintiff with the alternate version of the Second Amendment; (h) intentionally misstated that the representations and warranties contained in the FFA Company Agreement were true and correct on and as of the Purchase Date when, in fact, Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or

even Defendant FF Arabian; and (i) intentionally misstated that the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects. As a result of these misrepresentations and omissions, all of the representations made to Plaintiff were misleading.

83. These misrepresentations and omissions were material because a reasonable investor would have attached importance to, and be induced to act upon, the misrepresented and omitted information in determining whether to invest in Defendant FF Arabian. Indeed, reasonable investor would have considered it important in making a decision whether to invest in Defendant FF Arabian that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) Defendant FF Arabian's capitalization was artificially inflated; (c) Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider; (d) Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; (e) Defendant FF Arabian had "shadow versions" of critical corporate governance documents, each of which contained different rights and obligations relating to the company and its investor's rights therein; and (f) the information and materials submitted or caused to be submitted to such investor were not true and correct in all material respects.

84. At the time Defendant FF Arabian intentionally misstated and omitted to state this information to Plaintiff, Defendant FF Arabian knew that the representations were false and that Defendant FF Arabian had omitted to state material information. Indeed, Defendant FF Arabian knew or had reason to know that: (a) Defendant FF Arabian was inadequately capitalized to

achieve the corporate purpose set forth in the FFA Company Agreement because Defendant FF Arabian had access to its own corporate records and financial statements; (b) FF Independent had not actually invested $1.75 million in Defendant FF Arabian because Defendant FF Arabian had access to its own corporate records and financial statements; (c) Defendant FF Arabian had failed to provide Plaintiff with the Majority Action, the alternate version of the First Amendment, and the alternate version of the Second Amendment because Defendant FF Arabian knew what documents it had, and had not, provided to Plaintiff; (d) the representations and warranties contained in the FFA Company Agreement were not true and correct on and as of the Purchase Date because Defendant FF Arabian knew that it had wrongfully transferred (i) $3.5 million of the Arabian Investment to Defendant Palo Verde to repay the Touchback Investment, and (ii) $2.0 million of the Arabian Investment to other Freedom Films Companies to pay expenses that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and (e) the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

85.     Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy: (a) misstated and omitted to state this information to Plaintiff with the intent that Plaintiff would invest in Defendant FF Arabian based upon such misstatements and omissions; and/or (b) had reason to expect that Plaintiff would invest in Defendant FF Arabian based upon such misstatements and omissions.  Indeed, at the time Defendant FF Arabian misstated and omitted to state this information to Plaintiff, Defendant FF Arabian was in dire financial condition, and needed to fund the shortfall created by the wrongful misappropriation of $3.5 million to repay the Touchback Investment, the wrongful

misappropriation of $2.0 million to other Freedom Films Companies, and the wrongful misappropriation of $4.0 million to pay the Palo Verde Investment. The only way Defendant FF Arabian could fund this shortfall was to solicit new investments from unwitting investors like Plaintiff. Of course, no reasonable person would invest in a company that was inadequately capitalized to achieve its corporate purpose, had artificially inflated its capitalization, had invested more than 50% of its purported capitalization in an insider, had impermissibly used its capital for purposes that were wholly unrelated to its stated corporate purpose, and had provided incomplete and inaccurate information to its investors.

86. Plaintiff was justified in relying upon these misrepresentations and omissions. Indeed, Section 5 of the Second Amendment expressly provides that: (a) "the representations and warranties contained in the [FFA] Company Agreement [w]ere true and correct on and as of [the Purchase Date] as though made on [such] date . . ."; and (b) all information and materials submitted or caused to be submitted to [Plaintiff] in connection with th[e Second Amendment] and [Plaintiff]'s entry as a member into [Defendant FF Arabian] are true and correct in all material respects."

87. Plaintiff suffered damages in reliance upon, and as a direct and proximate result of, these misrepresentations and omissions. Indeed, Plaintiff would not have invested (and lost) Plaintiff's Investment had Plaintiff been aware that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) Defendant FF Arabian's capitalization was artificially inflated; (c) Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider; (d) Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and, (e) the information and materials submitted or

caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

88.     Defendant Palo Verde, Defendant Presley, Defendant Ross, and Defendant Stacy each directly or indirectly provided substantial assistance to Defendant FF Arabian: (a) in connection with its offering and sale of the Security to Plaintiff by means of an (i) untrue statement made to Plaintiff of material facts, and/or (ii) omission to state to Plaintiff material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (b) with either (i) intent to deceive or defraud Plaintiff, and/or (ii) reckless disregard for the truth or the law.  Accordingly, pursuant to Section 581-33(F)(2) of the Texas Act, Defendant Palo Verde, Defendant Presley, Defendant Ross, and Defendant Stacy each are jointly and severally liable for Defendant FF Arabian's violations of Section 581-33(A) of the Texas Act to the same extent as Defendant FF Arabian.

### COUNT IV:
### COMMON-LAW FRAUD
### AGAINST DEFENDANT FF ARABIAN

89.     Plaintiff incorporates the facts and allegations set forth above as if they were fully set forth herein.

90.     Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, made representations to Plaintiff relating to Defendant FF Arabian.  Specifically, Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, represented to Plaintiff that: (a) FF Independent had invested $1.75 million in Defendant FF Arabian; (b) the representations and warranties contained in the FFA Company Agreement were true and correct on and as of the Purchase Date; and (c) the information and materials submitted or caused to be submitted to Plaintiff in connection with

the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were true and correct in all material respects.

91. These representations were false because they contained statements of present and/or past facts relating to Defendant FF Arabian that were untrue, deceptive, and/or misleading. Specifically, Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, misrepresented to Plaintiff that: (a) FF Independent had invested $1.75 million in Defendant FF Arabian when, in fact, FF Independent had only invested $1.0 million; (b) the representations and warranties contained in the FFA Company Agreement were true and correct on and as of the Purchase Date when, in fact, Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and (c) the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects when, in fact, Defendant FF Arabian provided Plaintiff with incomplete and incorrect information relating to the financial condition and operational viability of Defendant FF Arabian. As a result of these misrepresentations, all of the representations made to Plaintiff were misleading.

92. These misrepresentations were material because a reasonable person would have attached importance to, and be induced to act upon, the represented information in determining whether to invest in Defendant FF Arabian. Indeed, reasonable person would have considered it important in making a decision whether to invest in Defendant FF Arabian that: (a) Defendant FF Arabian's capitalization was artificially inflated; (b) Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or

even Defendant FF Arabian; and (c) it was provided incomplete and incorrect information relating to the financial condition and operational viability of Defendant FF Arabian.

93.     At the time Defendant FF Arabian made these misrepresentations, Defendant FF Arabian: (a) knew, was aware, or understood that such representations were false; and/or (b) made such representations recklessly, as a positive assertion, and without knowledge of its truth. Indeed, Defendant FF Arabian knew or had reason to know that: (a) FF Independent had not actually invested $1.75 million in Defendant FF Arabian because Defendant FF Arabian had access to its own corporate records and financial statements; (b) the representations and warranties contained in the FFA Company Agreement were not true and correct on and as of the Purchase Date because Defendant FF Arabian knew that it had wrongfully transferred (i) $3.5 million of the Arabian Investment to Defendant Palo Verde to repay the Touchback Investment, and (ii) $2.0 million of the Arabian Investment to other Freedom Films Companies to pay expenses that were wholly unrelated to the Movie Project or even Defendant FF Arabian; (c) Defendant FF Arabian had failed to provide Plaintiff with the Majority Action, the alternate version of the First Amendment, and the alternate version of the Second Amendment because Defendant FF Arabian knew what documents it had, and had not, provided to Plaintiff; and (d) the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

94.     Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy: (a) made these misrepresentations with the intent that Plaintiff would invest in Defendant FF Arabian based upon such misrepresentations; and/or (b) had reason to expect that Plaintiff would invest in Defendant FF Arabian based upon such

misrepresentations.  Indeed, at the time Defendant FF Arabian misstated and omitted to state this information to Plaintiff, Defendant FF Arabian was in dire financial condition, and needed to fund the shortfall created by the wrongful misappropriation of $3.5 million to repay the Touchback Investment, the wrongful misappropriation of $2.0 million to other Freedom Films Companies, and the wrongful misappropriation of $4.0 million to pay the Palo Verde Investment. The only way Defendant FF Arabian could fund this shortfall was to solicit new investments from unwitting investors like Plaintiff.  Of course, no reasonable person would invest in a company that had artificially inflated its capitalization, had impermissibly used its capital for purposes that were wholly unrelated to its stated corporate purpose, and had invested more than 50% of its purported capitalization in an insider.

95.    Plaintiff was justified in relying upon these misrepresentations.  Indeed, Section 5 of the Second Amendment expressly provides that: (a) "the representations and warranties contained in the [FFA] Company Agreement [w]ere true and correct on and as of [the Purchase Date] as though made on [such] date . . ."; and (b) all information and materials submitted or caused to be submitted to [Plaintiff] in connection with th[e Second Amendment] and [Plaintiff]'s entry as a member into [Defendant FF Arabian] are true and correct in all material respects."

96.    Plaintiff suffered damages in reliance upon, and as a direct and proximate result of, these misrepresentations.  Indeed, Plaintiff would not have invested (and lost) Plaintiff's Investment had Plaintiff been aware that: (a) Defendant FF Arabian's capitalization was artificially inflated; (b) Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and, (c) the information and materials submitted or caused to be submitted to Plaintiff in connection with the

Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

**COUNT V:**
**FRAUD BY NON-DISCLOSURE**
**AGAINST DEFENDANT FF ARABIAN**

97.     Plaintiff incorporates the facts and allegations set forth above as if they were fully set forth herein.

98.     Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, concealed from or failed to disclose facts to Plaintiff relating to Defendant FF Arabian.  Specifically, Defendant FF Arabian: (a) intentionally omitted to state that Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) intentionally omitted to provide Plaintiff with the Majority Action; (c) intentionally omitted to state that there were two different versions of the First Amendment; (d) intentionally omitted to state that there were two different versions of the Second Amendment; (e) intentionally omitted to provide Plaintiff with the alternate version of the First Amendment; and (g) intentionally omitted to provide Plaintiff with the alternate version of the Second Amendment.  As a result of these omissions, all of the representations made to Plaintiff were misleading.

99.     Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, remained deliberately silent even though it had a duty to disclose these concealed or omitted facts to Plaintiff because: (a) Defendant FF Arabian had made prior representations that created a substantially false impression; and/or (b) Defendant FF Arabian voluntarily disclosed some, but not all, material information to Plaintiff relating to FFA Arabian.

100.     These facts that Defendant FF Arabian concealed or failed to disclose were material because a reasonable person would have attached importance to, and be induced to act upon, the concealed or omitted facts in determining whether to invest in Defendant FF Arabian. Indeed, reasonable person would have considered it important in making a decision whether to invest in Defendant FF Arabian that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider; and (c) Defendant FF Arabian had "shadow versions" of critical corporate governance documents, each of which contained different rights and obligations relating to the company and its investor's rights therein.

101.     At the time Defendant FF Arabian concealed or failed to disclose these facts, Defendant FF Arabian knew, was aware, or understood that Plaintiff: (a) was ignorant of such facts; and/or (b) did not have an equal opportunity to discover such facts.  Indeed, Defendant FF Arabian knew or had reason to know that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement because Defendant FF Arabian had access to its own corporate records and financial statements; (b) Defendant FF Arabian had failed to provide Plaintiff with the Majority Action, the alternate version of the First Amendment, and the alternate version of the Second Amendment because Defendant FF Arabian knew what documents it had, and had not, provided to Plaintiff; and (c) Plaintiff did not know of, and would not have an opportunity to discover, any of these facts unless Defendant FF Arabian disclosed them to Plaintiff.

102.     By concealing or failing to disclose these facts, Defendant FF Arabian: (a) intended to induce Plaintiff to invest in Defendant FF Arabian; and/or (b) had reason to expect

that Plaintiff would invest in Defendant FF Arabian based upon such representations. Indeed, at the time Defendant FF Arabian intentionally misstated and omitted to state this information to Plaintiff, Defendant FF Arabian was in dire financial condition, and needed to fund the shortfall created by the wrongful misappropriation of $3.5 million to repay the Touchback Investment, the wrongful misappropriation of $2.0 million to other Freedom Films Companies, and the wrongful misappropriation of $4.0 million to pay the Palo Verde Investment. The only way Defendant FF Arabian could fund this shortfall was to solicit new investments from unwitting investors like Plaintiff. Of course, no reasonable person would invest in a company that was inadequately capitalized to achieve its corporate purpose, and invested more than 50% of its purported capitalization in an insider.

103. Plaintiff suffered damages as a direct and proximate result of these omissions. Indeed, Plaintiff would not have invested (and lost) Plaintiff's Investment had Plaintiff been aware that: (a) Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) Defendant FF Arabian had agreed to "invest" more than 50% of its purported capitalization in an insider; and (c) Defendant FF Arabian had "shadow versions" of critical corporate governance documents, each of which contained different rights and obligations relating to the company and its investor's rights therein.

## COUNT VI: EXEMPLARY DAMAGES
### AGAINST ALL DEFENDANTS

104. Plaintiff re-alleges and incorporates the facts and allegations set forth above as if they were fully set forth herein.

105. Pursuant to Section 41.003(a) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, Plaintiff demands and is entitled to recover exemplary damages from Defendant FF Arabian,

Defendant Palo Verde, Defendant Presley, Defendant Ross, and Defendant Stacy in connection with Count IV and Count V.

106. Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, caused Plaintiff injury by aggravated misconduct that constitutes gross negligence or malice. Indeed, at all relevant times Defendant FF Arabian, at the direction and control of Defendant Presley, Defendant Ross, and Defendant Stacy, specifically intended to cause substantial harm to Plaintiff — or Defendant FF Arabian at least either knew, should have known, or had reason to know that there was an extreme degree of risk of causing severe harm to Plaintiff — by: (a) intentionally omitting to state that Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) intentionally misstating that FF Independent had invested $1.75 million in Defendant FF Arabian when, in fact, FF Independent had only invested $1 million; (c) intentionally omitting to provide Plaintiff with the Majority Action; (d) intentionally omitting to state that there were two different versions of the First Amendment; (e) intentionally omitting to state that there were two different versions of the Second Amendment; (f) intentionally omitting to provide Plaintiff with the alternate version of the First Amendment; (g) intentionally omitting to provide Plaintiff with the alternate version of the Second Amendment; (h) intentionally misstating that the representations and warranties contained in the FFA Company Agreement were true and correct on and as of the Purchase Date when, in fact, Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and (i) intentionally misstating that the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and

Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

107.     In addition, Defendant Palo Verde, Defendant Presley, Defendant Ross, and Defendant Stacy specifically intended to cause substantial harm to Plaintiff — or Defendant Palo Verde, Defendant Presley, Defendant Ross, and Defendant Stacy at least either knew, should have known, or had reason to know that there was an extreme degree of risk of causing severe harm to Plaintiff — by exercising their respective power to direct or cause the direction of the management and policies of Defendant FF Arabian and, thereby, cause Defendant FF Arabian to: by: (a) intentionally omit to state that Defendant FF Arabian was inadequately capitalized to achieve the corporate purpose set forth in the FFA Company Agreement; (b) intentionally misstate that FF Independent had invested $1.75 million in Defendant FF Arabian when, in fact, FF Independent had only invested $1 million; (c) intentionally omit to provide Plaintiff with the Majority Action; (d) intentionally omit to state that there were two different versions of the First Amendment; (e) intentionally omit to state that there were two different versions of the Second Amendment; (f) intentionally omit to provide Plaintiff with the alternate version of the First Amendment; (g) intentionally omit to provide Plaintiff with the alternate version of the Second Amendment; (h) intentionally misstate that the representations and warranties contained in the FFA Company Agreement were true and correct on and as of the Purchase Date when, in fact, Defendant FF Arabian had impermissibly used its capital for purposes that were wholly unrelated to the Movie Project or even Defendant FF Arabian; and (i) intentionally misstate that the information and materials submitted or caused to be submitted to Plaintiff in connection with the Second Amendment and Plaintiff's entry as a member into Defendant FF Arabian were not true and correct in all material respects.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, by reason of the foregoing, Plaintiff respectfully requests that this Court:

A.     enter judgment against Defendant FF Arabian, Defendant Palo Verde, Defendant Presley, Defendant Ross, and Defendant Stacy;

B.     issue a writ of attachment upon the assets of Defendant FF Arabian, Defendant Palo Verde, Defendant Presley, Defendant Ross, and Defendant Stacy to the extent of all amounts received by each such defendant in connection with Plaintiff's investment in Defendant FF Arabian;

C.     impose a constructive trust upon the assets of Defendant FF Arabian, Defendant Palo Verde, Defendant Presley, Defendant Ross, and Defendant Stacy to the extent of all amounts received by each such defendant in connection with Plaintiff's investment in Defendant FF Arabian;

D.     enjoin the disposition of the assets of Defendant FF Arabian, Defendant Palo Verde, Defendant Presley, Defendant Ross, and Defendant Stacy to the extent of all amounts received by each such defendant in connection with Plaintiff's investment in Defendant FF Arabian;

E.     grant Plaintiff recovery of all amounts paid by Plaintiff in connection with its investment in Defendant FF Arabian;

F.     award Plaintiffs compensatory and exemplary damages in an amount to be determined at trial.

G.     award Plaintiff its attorneys' fees, costs, and other expenses incurred in connection with the prosecution of this action;

H.     award Plaintiff pre- and post-judgment interest at the highest applicable rate; and

I.      grant such other and further relief as is just and proper.


Dated: May 22, 2015                                    Respectfully Submitted,

                                                       /s/ Brian K. Norman
                                                       Brian K. Norman
                                                       State Bar No. 00797161

                                                       SHAMOUN & NORMAN LLP
                                                       1755 Wittington Place, Suite 200
                                                       Dallas, TX 75234
                                                       Telephone: (214) 987-1745
                                                       Facsimile: (214) 521-9033
                                                       Email: bkn@snlegal.com

                                                       ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on May 22, 2015, the foregoing document was caused to be served on each of the previously served parties to this action in accordance with the Federal Rules of Civil Procedure.  The undersigned hereby certifies that Plaintiff shall use reasonable diligence to timely serve all parties that have not yet been served or appeared in this action.


Dated: May 22, 2015                                    Respectfully Submitted,

                                                       /s/ Brian K. Norman
                                                       Brian K. Norman
                                                       State Bar No. 00797161

                                                       SHAMOUN & NORMAN LLP
                                                       1755 Wittington Place, Suite 200
                                                       Dallas, TX 75234
                                                       Telephone: (214) 987-1745
                                                       Facsimile: (214) 521-9033
                                                       Email: bkn@snlegal.com

                                                       ATTORNEYS FOR PLAINTIFF